NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FORECLOSURE EXCESS PROCEEDS, LLC, *Appellant*,

*v.*

ASSET RECOVERY, INC., *Appellee*.

No. 1 CA-CV 25-0829

FILED 08-05-2026

Appeal from the Superior Court in Mohave County
No. S8015CV202201130
The Honorable Steven C. Moss, Judge

**AFFIRMED**

COUNSEL

John N. Moore Attorney at Law, Glendale
By John N. Moore
*Counsel for Appellant*

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Andrew J. Becke delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Samuel A. Thumma joined.

---

**B E C K E**, Judge:

**¶1** Appellant Foreclosure Excess Proceeds LLC ("FEP") appeals the superior court's judgment requiring it to return certain monies to the court and awarding Appellee Asset Recovery, Inc. ("ARI") attorneys' fees and costs. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2** Arizona permits non-judicial foreclosure under a deed of trust, allowing the trustee to sell property securing a defaulted loan. A.R.S. § 33-807. A statute sets out how the trustee must distribute the proceeds of the sale. A.R.S. § 33-812(A)-(B). Instead of distributing the funds directly, the trustee may choose to deposit some or all proceeds with the county treasurer and initiate a civil action to notify interested parties. A.R.S. § 33-812(C)-(D). As applicable here, a claimant may hire a third party to recover proceeds from the county treasurer on the claimant's behalf. A.R.S. § 33-812(P). The statute prescribes requirements for such an agreement and limits the fees the third party may charge. *Id.*

**¶3** Catheryn Erickson owned real property in Kingman. After her death, Quality Loan Service Corporation ("Quality") sold the property at a trustee's sale pursuant to Catheryn's deed of trust. Quality then deposited $60,849.11 in excess proceeds (the "Excess Proceeds") from the sale with the Mohave County Treasurer and filed a complaint for distribution of the Excess Proceeds to any party legally entitled to them.

**¶4** FEP filed an application asking the court to release the Excess Proceeds to it for Catheryn's two children, Kaara Borker and Michael Erickson[1] (collectively, "the Heirs"). FEP attached an agreement in which Borker authorized FEP to collect the Excess Proceeds for her. It asserted that Borker was entitled to collect the monies (under what was referred to as a

---

[1] To avoid confusion between parties who have the same last name, we respectfully refer to Catheryn and Michael Erickson by their first names.

successor affidavit) because the amount was less than $75,000 and Michael had consented to Borker acting on his behalf.

¶5 In March 2023, the superior court ordered the Mohave County Treasurer to release the Excess Proceeds to FEP for the benefit of Borker. The Mohave County Treasurer released the funds to FEP, but FEP did not deliver the funds to Borker. When Borker followed up by email several months later, FEP responded that she should call its office. Borker then repeatedly called FEP, but reached only voicemail; the voice mailbox was full and would not accept a message.

¶6 In August 2024, having heard nothing from FEP and unaware that it had obtained the Excess Proceeds, the Heirs assigned their rights to the Excess Proceeds to ARI in exchange for consideration. ARI applied to the superior court for an order directing the Mohave County Treasurer to distribute the Excess Proceeds to ARI, citing the Heirs' assignments. The superior court noted that it had already entered an order releasing the Excess Proceeds to FEP and indicated it would dismiss ARI's application if no action was taken to set aside the March 2023 order.

¶7 ARI moved for relief from the March 2023 order, citing Arizona Rule of Civil Procedure ("Rule") 60(b)(3), (4), and (6). It argued that FEP had submitted a false signature from Michael with its application for distribution of the Excess Proceeds and that the agreement with FEP that Borker entered "on behalf of [Catheryn's] estate" was void because Borker had never been appointed the personal representative for Catheryn's estate. ARI asked the court to set aside the March 2023 order and require FEP to return the Excess Proceeds so the court could properly distribute them.

¶8 FEP, purportedly on behalf of Borker, filed a response. It offered documents to rebut ARI's assertion that Michael's signature was false and argued that Borker was not required to be appointed the personal representative for Catheryn's estate because the property at issue was less than $75,000. FEP maintained that the March 2023 order was not void and the motion to set it aside on the grounds of fraud was untimely.

¶9 At oral argument on the motion, FEP acknowledged that it had received the Excess Proceeds from the Mohave County Treasurer and affirmed that it still held the money. The superior court directed FEP's counsel to deposit any remaining Excess Proceeds with the Clerk of Court and to provide an accounting of all funds received and disbursed. The court set an evidentiary hearing, indicating it would determine whether the fees FEP charged Borker were appropriate under A.R.S. § 33-812(P) and would

receive evidence regarding the authenticity of Michael's signature submitted with FEP's application and other factual issues.

¶10        FEP deposited $50,512.97 with the Clerk, accompanied by a document purporting to show the fees and costs FEP had deducted from the gross amount of $56,796.76 to determine a net amount of $50,512.97 was owed to Borker. ARI objected that the accounting was insufficiently detailed and contained no supporting documents. It also complained that the gross amount of the Excess Proceeds—before fees and costs were deducted—should have been $60,849.11, not $56,796.76. FEP admitted it had incorrectly listed the gross amount, and the court ordered FEP to remit an additional $4,056.76 to the Clerk, to reflect the correct gross amount.

¶11        After an evidentiary hearing, the superior court found that no forgery had occurred, but FEP breached its agreement with Borker and made "little or no effort" to deliver the Excess Proceeds to the Heirs. The court determined that, although FEP's contract with Borker capped fees and costs at $4,000, FEP sought unverified, "highly dubious and often ridiculous" charges exceeding that limit. It concluded FEP was entitled to $500 in filing and certified mailing fees and $3,500 in reasonable attorneys' fees. The court also found that the Heirs had assigned their rights to the Excess Proceeds to ARI. Treating ARI's Rule 60 motion as one to enforce the March 2023 order, the court ordered that $56,849.11 ($60,849.11 - $4,000) be paid to ARI. It later awarded ARI $9,500 in attorneys' fees under A.R.S. § 12-341.01 and its taxable costs against FEP.

¶12        FEP timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(2). *See Arvizu v. Fernandez*, 183 Ariz. 224, 226–27 (App. 1995) (post-judgment order is appealable when it raises issues different from those that could be raised in an appeal from the judgment itself and when it enforces or stays the judgment).

**DISCUSSION**

¶13        FEP argues ARI lacked standing and the superior court exceeded its authority under Rule 60. After a bench trial, we review the superior court's legal decisions *de novo*, but defer to its findings of fact unless they are clearly erroneous. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). We view the evidence presented at trial in the light most favorable to upholding the court's ruling. *Id*. We also review the availability of equitable remedies *de novo* but will not disturb the court's imposition of an equitable remedy absent an abuse of discretion. *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 210, ¶ 8 (App. 2010).

**I.     The Evidence Supports the Superior Court's Determination that the Heirs Assigned Their Interest in the Excess Proceeds to ARI.**

¶14          FEP asserts that ARI held no legitimate interest in the Excess Proceeds and therefore lacked standing to participate in the superior court proceedings. It bases this contention on two propositions: first, that Borker and Michael had already assigned their rights to the Excess Proceeds to FEP and thus had no remaining rights to convey to ARI and second, that ARI failed to present sufficient evidence demonstrating a valid assignment from the Heirs. We reject both arguments.

*A.     Borker & Michael Did Not Assign Their Rights to FEP*

¶15          An assignment is a transfer of rights or property from one party (the assignor) to another party (the assignee). *Assignment, Assignor, Assignee,* Black's Law Dictionary (12th ed. 2024). When an assignment is unconditional, whatever right, title, or interest the assignor possessed passes to the assignee. *Martinez v. Bucyrus-Erie Co.*, 113 Ariz. 119, 120 (1976). Once an interest has been assigned, the assignor has no remaining interest to be assigned to any other party. *Allen v. Hamman Lumber Co.*, 44 Ariz. 145, 151 (1934).

¶16          ARI submitted evidence showing that the Heirs assigned their ownership interests in the Excess Proceeds to ARI, and the superior court concluded that the Heirs had, in fact, transferred their rights to ARI. FEP contends the court erred because, in its view, the Heirs had already transferred those rights to FEP and therefore had nothing left to assign to ARI.

¶17          To begin, only Borker entered an agreement with FEP. Michael never had an agreement with FEP and did not assign any of his rights to the Excess Proceeds to FEP.

¶18          Even as to Borker, though, FEP's argument fails. Borker's agreement with FEP was not an assignment of the Excess Proceeds. The agreement states that Borker "partially assigns to FEP all right and authority to pursue [Borker's] rights, claims and interests in the Excess Proceeds," which confirms that she retained ownership of the funds and merely authorized FEP to act on her behalf to collect them. The fact that she agreed to compensate FEP for this work further underscores that no assignment of her substantive rights occurred.

¶19        Because neither Borker nor Michael assigned their rights in the Excess Proceeds to FEP, both remained free to assign those rights to ARI.

>        **B.**      *ARI Was Not Required to Produce the Full Assignment Document*

¶20        FEP argues ARI failed to establish that it had a direct stake in the outcome of this case because it did not prove that Borker and Michael assigned their rights to the Excess Proceeds to ARI.

¶21        To establish its interest in the Excess Proceeds, ARI offered Borker's testimony that she assigned her ownership interest in the Excess Proceeds to ARI in exchange for consideration. Michael also confirmed that he signed the document ARI submitted to the court evidencing the assignment. In that document entitled "Sale, Transfer and Assignment of Surplus Foreclosure Funds," each of the Heirs states that they are selling, transferring, and assigning to ARI any and all rights they have in the Excess Proceeds. The document notes that it is not the parties' full agreement because they also executed a confidential contract containing the complete terms, including the compensation ARI paid to the Heirs.

¶22        FEP argued that ARI was required to prove it received an assignment of the Heirs' rights by producing the confidential contract and asked the superior court to exclude the "Sale, Transfer and Assignment of Surplus Foreclosure Funds" document under the best evidence rule. The superior court overruled FEP's best evidence objection. FEP contends the court erred because the nature and extent of the Heirs' assignment to ARI cannot be determined based on the "Sale, Transfer and Assignment of Surplus Foreclosure Funds" document alone. "We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results." *Roaf v. Stephen S. Rebuck Consulting, LLC*, 257 Ariz. 452, 456, ¶ 11 (2024) (cleaned up) (quoting *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996)).

¶23        We reject FEP's argument that the best evidence rule required ARI to produce the confidential contract. Under Arizona Rule of Evidence 1002, an original document is required only when a party seeks to prove the content of that document. ARI was not attempting to prove the content of the confidential contract; it sought only to show that an assignment occurred. That fact was established through the "Sale, Transfer and Assignment of Surplus Foreclosure Funds" document and the Heirs' testimony. *See also Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 406, ¶ 9 n.2 (App. 2008) (water company was not required to prove its ownership of

water through sales documents or ownership certificates under the best evidence rule and could instead rely on any admissible evidence to establish its rights to water that pond owners used). Accordingly, ARI was not required to produce the confidential contract to prove that Borker and Michael assigned their rights to the Excess Proceeds to ARI.

¶24  The superior court also found that the confidential contract was not relevant, so ARI was not required to produce it and FEP was not permitted to question witnesses about it. FEP offers no argument disputing that ruling and therefore has waived any challenge to it. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

¶25  To the extent FEP challenges the superior court's factual finding that the Heirs assigned their rights to ARI, FEP has not shown that the court's ruling was clearly erroneous. *Town of Marana*, 230 Ariz. at 152, ¶ 46.

## II. The Superior Court Properly Exercised Its Discretion to Reduce FEP's Fee and Order It to Return the Excess Proceeds.

¶26  FEP argues that because ARI sought relief solely under Rule 60, the superior court lacked authority to enforce the March 2023 order or take any further action once it denied the Rule 60 motion.[2]

¶27  At the oral argument on ARI's Rule 60 motion, the superior court noted a factual dispute as to whether the signature attributed to Michael in FEP's application for distribution of the Excess Proceeds was forged, and set an evidentiary hearing under Rule 60. The court also explained that A.R.S. § 33-812 authorized it to resolve disputes over a third party's fees even after judgment and stated it would address that issue at the evidentiary hearing.

¶28  Although FEP did not object when the superior court set an evidentiary hearing to evaluate the reasonableness of its fees, it now argues that the court erred in doing so. It further contends that the court exceeded its authority by awarding ARI relief after it denied the Rule 60 motion. But

---

[2] FEP also raises several arguments on appeal challenging the merits of ARI's Rule 60 motion. Because the superior court denied that motion, we do not address those arguments. *Cf. In re Estate of Friedman*, 217 Ariz. 548, 551, ¶ 9 (App. 2008) (party may only appeal that portion of a judgment that adversely affects it).

A.R.S. § 33-812(P) expressly allows a claimant to challenge the reasonableness of any fee charged by a third party assisting in the recovery of excess proceeds from a non-judicial foreclosure. A.R.S. § 33-812(P). And the superior court retains inherent authority to enforce its judgments and to issue orders necessary to effectuate the administration of justice. *Arpaio v. Baca*, 217 Ariz. 570, 572, ¶ 4 n.3 (App. 2008); *see also In re Marriage of Rojas*, 255 Ariz. 277, 282, ¶ 9 (App. 2023) ("Consistent with the general power of any court to enforce and give effect to its judgments, a court similarly retains the power to enforce its decrees through enforcement actions."); *Holaway v. Realty Assocs.*, 90 Ariz. 289, 293 (1961) ("[E]very regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and for the enforcement of its judgments and mandates.").

**¶29**		FEP has shown no error in the superior court's consideration of the reasonableness of its fees.

## CONCLUSION

**¶30**		For the foregoing reasons, we affirm.

**¶31**		FEP argues an award of its attorneys' fees and costs on appeal is appropriate as a sanction pursuant to A.R.S. § 12-349 because ARI's Rule 60 motion was brought without substantial justification. Because ARI prevailed in the superior court and on appeal, FEP has not shown that ARI's action was without substantial justification (i.e., frivolous) or brought for purposes of delay or harassment.

**¶32**		ARI requests attorneys' fees on appeal under A.R.S. §§ 12-341.01 and -349(A)(1). We grant ARI's request under A.R.S. § 12-341.01 and award ARI costs and reasonable attorneys' fees on appeal upon its compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:		JR